UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



ROXX ALLISON LTD.,

        Plaintiff,

-against-

THE JEWELERS INC.,

        Defendant.

19-cv-3000 (JSR)

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.

Before the Court is a motion to dismiss the complaint for want of personal jurisdiction. See Motion to Dismiss, ECF No. 12. For the reasons that follow, the motion is denied.

"In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), a court may look to evidence outside the pleadings." Sandoval v. Abaco Club on Winding Bay, 507 F. Supp. 2d 312, 315 (S.D.N.Y. 2007). "The plaintiff bears the burden of establishing personal jurisdiction over the defendant. Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing." Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala, 989 F.2d 572, 580 (2d Cir. 1993) (quoting Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir.1990) (per curiam)). At this very early stage of the case, "the plaintiff's prima facie showing may be established solely by allegations." Ball v.

1

Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990). By filing a Rule 12(b)(2) motion, a defendant "assumes the truth of the plaintiff's factual allegation for purposes of the motion and challenges [only] their sufficiency." Id. Unless the district court chooses to hold an evidentiary hearing - which it is permitted but not obligated to do - a plaintiff's prima facie showing requires that the motion be denied, even in the face of controverting evidence from the defendant. Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 85-86 (2d Cir. 2013) (per curiam).

Here, the Court did not find it necessary to hold a hearing, because the facts, as alleged in the pleadings and supplemented by the parties' submissions, are largely undisputed. Plaintiff Roxx Allison Ltd. is a jewelry wholesaler incorporated and located in New York. First Amended Compl. ("1AC") ¶ 1, ECF No. 7. Defendant The Jewelers Inc. is a jewelry retailer incorporated and located in Las Vegas, Nevada. Yerushalmi Decl. ¶ 2, ECF No. 14. In 2014, a Roxx Allison representative visited The Jewelers flagship store in Las Vegas with samples of merchandise, and The Jewelers agreed to sell Roxx Allison jewelry. Id. ¶ 7. Over the next several years, Roxx Allison sold pieces to The Jewelers on numerous occasions. Sometimes the deals were arranged in person in Las Vegas (either at The Jewelers store or at a trade show), while other times they were arranged by email or telephone. Id. ¶¶ 8-9. In the instant

suit, Roxx Allison claims that The Jewelers has not paid for all the jewelry it retained. 1AC ¶ 15. The Jewelers argue that the parties' relationship was focused on Nevada and that it cannot be haled into court in New York.

"Establishing personal jurisdiction over a party 'requires satisfaction of three primary elements': (1) procedurally proper service of process on the defendant; (2) a statutory basis for personal jurisdiction; and (3) the exercise of jurisdiction must be consistent with 'constitutional due process principles.'" Quinio v. Aala, 344 F. Supp. 3d 464, 479-80 (E.D.N.Y. 2018) (quoting Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 59-60 (2d Cir. 2012)). "Whether a federal district court has personal jurisdiction over a non-resident defendant is first determined with reference to the law of the jurisdiction in which that district court sits" - in this case, New York. Sandoval, 507 F. Supp. 2d at 315 (citation omitted). Because defendant does not challenge the service of process, the Court proceeds to examine New York's long-arm statute.

New York law permits the exercise of specific personal jurisdiction over any non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services

3

in the state." N.Y. C.P.L.R. § 302(a)(1).[1] This "is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." Kreutter v. McFadden Oil Corp., 522 N.E.2d 40, 43 (N.Y. 1988).

"To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007) (alteration in original). "Transacting business" is defined as "purposeful activity," or "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. (quoting McKee Elec. Co. v. Rauland-Borg Corp., 229 N.E.2d 604, 607 (N.Y. 1967)). "Several factors should be considered in determining whether an out-of-state defendant transacts business in New York," including but not limited to whether the defendant has an ongoing contractual relationship with a New York

---

[1] Plaintiff does not claim that the Court has general jurisdiction over defendant pursuant to N.Y. C.P.L.R. § 301, nor that any of the other bases for specific jurisdiction in § 302 apply.

4

corporation; whether the contract was negotiated in New York; and whether the defendant has visited New York in relation to the contract. Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004).

Here, although representatives of The Jewelers never traveled to New York for business, the nature and quality of the parties' relationship vis-à-vis New York supports the exercise of jurisdiction. Roxx Allison and The Jewelers engaged in a four-year-long business relationship whereby The Jewelers bought jewelry worth several hundred thousand dollars. While some of these purchases were negotiated in person in Las Vegas, others were placed by phone or email and those communications had just as much connection to New York as to Nevada. New York law is clear that a party is subject to personal jurisdiction when that party makes repeated, purposeful telephone calls into the state for the purpose of transacting business. See, e.g., Parke-Bernet Galleries, Inc. v. Franklyn, 256 N.E.2d 506, 508 (N.Y. 1970) (holding that jurisdiction could be exercised over out-of-state defendant who participated in auction bidding by telephone); C. Mahendra (N.Y.), LLC v. Nat'l Gold & Diamond Ctr., 125 A.D.3d 454, 457-58 (1st Dep't 2015) (approving exercise of personal jurisdiction over California diamond seller who placed several orders over two years from New York wholesaler).

5

Defendant argues that telephone calls placed from out-of-state can never be sufficient to confer personal jurisdiction, absent some additional connection to the forum. But while it is true that New York courts "have generally held telephone communications to be insufficient for finding purposeful activity conferring personal jurisdiction," nonetheless, "in some cases, telephone communications will, in fact, be sufficient to confer jurisdiction." Id. at 457. In distinguishing these two situations, New York courts have suggested certain helpful guideposts, such as the nature and extent of the activity in New York, the size and number of the transactions, and so on. Compare Parke-Bernet Galleries, 256 N.E.2d at 508 (noting that single telephone order would not confer jurisdiction), with Fischbarg v. Doucet, 880 N.E.2d 22, 27 (N.Y. 2007) (upholding exercise of jurisdiction over defendant who sought to establish attorney-client relationship with New York plaintiff); and Deutsche Bank Sec., Inc. v. Montana Bd. of Investments, 850 N.E.2d 1140, 1143 (N.Y. 2006) (upholding exercise of jurisdiction over sophisticated defendant who negotiated sale of $15 million in bonds with New York trader); see also Sunward Elecs., 362 F.3d at 23 ("[T]he amount of purchases by Defendants from New York alone may be sufficient to confer jurisdiction."). And the law is clear that "the purposeful creation of a continuing relationship with a New York corporation" will confer jurisdiction, "even though defendants never entered New

York." Fischbarg, 880 N.E.2d at 27 (quoting George Reiner & Co. v. Schwartz, 363 N.E.2d 551, 554 (N.Y. 1977)).

There is no question that the defendant here purposefully created a continuing relationship with plaintiff. Defendant did not make an isolated order or two; the relationship with Roxx Allision spanned multiple years and substantial purchases. Indeed, this case is materially indistinguishable from Mahendra, in which the First Department upheld the exercise of jurisdiction over an out-of-state diamond retailer who placed telephone orders with a New York wholesaler, even though "defendant's employees did not travel to New York on business." 125 A.D.3d at 456. That decision virtually dictates the result here.

Next, defendant suggests that the exercise of jurisdiction would be improper because Roxx Allison initiated the relationship and was the driving force behind it. But as the New York courts have stated, "it is not necessarily who initiated contact that is determinative, but rather, the nature and quality of the contacts and the relationship established as a result." Grimaldi v. Guinn, 72 A.D.3d 37, 51 (2d Dep't 2010). Defendants admits to initiating at least some of the communications at issue in this case, and to reaching out to plaintiff to place orders. It is clear, then, that this was not a one-sided arrangement. Moreover, plaintiff has submitted a declaration claiming that defendant "frequent[ly]" made inquiries about, or placed orders for, plaintiff's

7

merchandise. Alibayof Decl. ¶ 4, ECF No. 19. That assertion is supported by exhibits containing what appear to be over twenty emails from a representative of The Jewelers, reaching out to Roxx Allison for the purpose of placing orders. Id. ¶ 5. Because "all factual disputes are resolved in the plaintiff's favor" at this early stage, Seetransport Wiking, 989 F.2d at 580, the Court finds, contrary to defendant's assertion, that defendant initiated communications and purchase orders more than infrequently.

Alternatively, defendant argues that emails, text messages, and telephone calls between the parties are insufficient to establish personal jurisdiction over defendant in New York because New York was not the "center of gravity" of the transactions. It is true that some decisions by federal courts in this district (including by the undersigned) have sometimes stated that "[c]ommunications into New York will only be sufficient to establish personal jurisdiction if they were related to some transaction that had its 'center of gravity' inside New York." Maranga v. Vira, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005); see also, e.g., MEE Direct, LLC v. Tran Source Logistics, Inc., No. 12-cv-6916 (SAS), 2012 WL 6700067, at *3 (S.D.N.Y. Dec. 26, 2012); ING Global v. United Parcel Service Oasis Comp Supply Corp., No. 11-cv-5697 (JSR), 2012 WL 28259, at *3 (S.D.N.Y. Jan. 4, 2012) (Rakoff, J.). But on reflection, the Court is no longer persuaded that the "center of gravity" test accurately reflects the law as

it is applied by New York courts. Indeed, the phrase seems to appear in New York State court decisions only in the context of choice-of-law analysis, not personal jurisdiction.

Regardless, New York is plainly at least one center of gravity of the transactions at issue. The communications concerned the purchase of jewelry located in New York. Perhaps Nevada, as the ultimate destination of the shipment, was also a center of gravity – but it would be strange indeed to say that New York was not the focal point of a transaction concerning goods located in New York and sold by a seller located in New York.

In the end, most of defendant's arguments boil down to the contention that the parties' transactions had more to do with Nevada than New York. Maybe so. But personal jurisdiction does not exist only in the "best" forum, or the one with the closest relationship to the transaction at issue. As long ago as 1970, the New York Court of Appeals observed that "in this day of instant long-range communications, one can engage in extensive purposeful activity here without ever actually setting foot in [New York]." Parke-Bernet Galleries, 256 N.E.2d at 508. In an era of ubiquitous remote negotiations and contracts executed from different countries, let alone states, it would blink reality to permit defendants to argue that they could not have anticipated being called into court in a state simply because they never physically traveled there. To be sure, it is easy to imagine abuses of this

9

rule. But, as previously discussed, this case does not involve an isolated transaction, nor was the defendant unaware of plaintiff's location. Defendant entered this relationship with eyes open. Proceeding in this forum will work no grave injustice.

"By purposefully creating a continuous relationship with a New York corporation and by maintaining constant communications with it," a defendant avails himself or herself "of the benefits and privileges of transacting business in New York and is therefore subject to jurisdiction under N.Y. C.P.L.R. § 302(a)(1)." House of Diamonds v. Borgioni, LLC, 737 F. Supp. 2d 162, 167 (S.D.N.Y. 2010) (holding that personal jurisdiction existed over purchaser who approached New York diamond seller at Las Vegas trade show, maintained continuous communication with seller, and placed several orders). Here, regardless of who first approached whom, defendant purposefully and voluntarily maintained a years-long relationship with plaintiff, during which time defendant placed many orders for jewelry worth a great sum of money. Accordingly, The Jewelers transacted business within New York within the meaning of C.P.L.R. § 302(a)(1). There is no serious dispute that the instant suit "aris[es] from" that transaction of business. The Court therefore finds that personal jurisdiction is proper under New York's long-arm statute.

Additionally, while defendant does not raise a constitutional objection to the exercise of personal jurisdiction, the Court

further concludes that due process is not offended by the maintenance of this suit. Although "section 302(a)(1) of New York's long-arm statute and constitutional due process are not coextensive," it is "rare" for a case where "personal jurisdiction [is] permitted under the long-arm statute" to "be prohibited under due process analysis." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 170 (2d Cir. 2013). Here, the Court is satisfied that minimum contacts exist, as defendant purposefully engaged in an ongoing business relationship with a New York company and regularly placed orders with that company through phone, email, and text over several years.

For the foregoing reasons, defendant's motion to dismiss is denied. The Clerk of the Court is directed to close docket entry 12.

SO ORDERED.

Dated: New York, NY

July 10 2019

JED S. RAKOFF, U.S.D.J.